## Bosworth, Auditor v. Metropolitan Life Insurance Company.

(Decided January 27, 1915.)

### Appeal from Franklin Circuit Court.

1. Taxation—Auditor Refunding Money Collected for Taxes—Construction of Section 162, Kentucky Statutes.—The primary intention of Section 162 of the Kentucky Statutes, authorizing the Auditor of Public Accounts to refund money paid into the treasury for taxes when no such taxes were in fact due, was to authorize the Auditor to refund to officers who collected taxes due the State and paid more into the treasury than was in fact due from them; it was not intended to authorize the Auditor to correct assessments made of the property of the taxpayer and refund the amounts he may determine are due them.

2. Taxation—Recovery of State of Taxes Paid.—Taxes paid into the State Treasury can be recovered only in cases wherein it is expressly permitted by Statute.

3. Taxation—Payment to Auditor of Taxes Not Due—Construction of Section 162, Kentucky Statutes.—Section 162 of the Kentucky Statutes, which authorizes the Auditor of Public Accounts to issue

his warrant on the treasurer for money paid into the treasury for taxes which were not due, does not authorize the taxpayer who has paid a greater amount of taxes than he really owed, or through mistake, to appear before the Auditor of Public Accounts and require him to take up and pass upon the merits of the claim, and to draw his warrant on the treasurer if it should seem to him the tax had been improperly paid.

JAMES GARNETT, Attorney General, and C. H. MORRIS, Assistant Attorney General, for appellant.

O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Reversing.

This action was brought by the appellee insurance company under Section 162 of the Kentucky Statutes, to require the Auditor of Public Accounts to issue his warrant on the State Treasurer in favor of appellee for $385.58, in repayment of taxes which it paid to the State when they were not, in fact, due.

Appellee is a foreign life insurance company, and did business in Kentucky during the period hereinafter mentioned. Under the statute in force from 1903 until 1906 every foreign life insurance company was required to annually pay $2.00 on each one hundred dollars of all premiums received in cash or otherwise, in this State, or out of the State, on business done in this State, during the year ending the 30th day of June last preceding; and the report of the company showing its business was required to be filed with the Auditor as of July 1st of each year. Kentucky Statutes, Sec. 4226.

In construing the act of 1903, *supra,* in Mutual Benefit Life Insurance Co. v. Commonwealth, 128 Ky., 174, this court held that a company was not liable to taxation on the entire premium stipulated for in the policy, but only on the amount actually collected by the company, and that any dividend credited to the policy-holder was merely an overcharge, which was never paid by the policy-holder, and therefore was not received by the company as cash or otherwise, within the meaning of the statute.

The General Assembly of 1906 was in session while the case above mentioned was pending in the Court of Appeals, and, upon its attention being called to the statute as above construed, it amended the act of 1903

by re-enacting the major part of what was then Section 4226 of the Kentucky Statutes; and after requiring the report of the insurance company to be made to the Auditor on the 1st day of January in each year, showing the premiums collected in or out of the State, on business done in the State for the year ending December 31st, it added a new provision, which was not in any of the preceding statutes, to the effect that, for the purposes of taxation, no deduction should be made for dividends allowed to policy-holders in fixing the amount of premiums received by the company. Acts 1906, p. 208; Kentucky Statutes, 1909, Section 4226.

In a case brought for the purpose of testing the act of 1906 this court decided that it precluded the defendant from deducting from its report dividends of any sort or character. Northwestern Mutual Life Ins. Co. v. James, Auditor, 138 Ky., 48.

The result was, that under the statute of 1903, and until the amendment of 1906, foreign life insurance companies were not required to report or pay taxes on so much of the premiums upon policies as represented dividends and bonuses credited to policy-holders upon their premiums.

Under the act of 1903, the report of the year's business was made as of June 30th of each year; but the law of 1906 required the companies to report the preceding year's business on January 1st of each year. The act of 1906 became effective on June 11th, 1906; and the question was presented whether a report should be made on June 30th, 1906, as was required by the act of 1903, or should it be deferred to January 1st, 1907, as required by the act of 1906. And, as the act of 1906 required the report to be made on January 1st, 1907, of its business for 1906, a report made under the act of 1906 would leave the period extending from July 1st, 1905, to January 1st, 1906, unreported, unless the report to be made on January 1st, 1907, embraced the preceding eighteen months' business.

Following its usual course of business, appellee made a report as of June 30th, 1906, for the year ending that day, showing the premiums received by appellee in Kentucky for the year ending June 30th, 1906, amounted to $1,146,555.78, in which there was included dividends credited upon premiums to the amount of $19,279.23. It

paid the $2.00 a hundred tax on $1,146,555.78 on July 1st., 1906, by its check of that date, to the Insurance Commissioner, for $22,931.12; the tax upon this $19,-279.23 of dividends amounting to $385.58.

This question arises: Was the appellee assessable under the statute of 1903, or under the statute of 1906? If it was required to make its report as of June 30th, 1906, and to pay its tax within thirty days thereafter, it was assessable under the statute of 1903; and if assessable under that statute, it was not required to include in its report of Kentucky premiums the credits therein allowed for dividends. Appellee contends that the act of 1906 was intended to have a prospective effect only, and that this is shown by the fact that if the insurance companies were not required to make their reports on June 30th, 1906, the State would be deprived of a very considerable item of revenue for the fiscal year which ended on that date.

The circuit court took that view of the case, and gave appellee the relief prayed for. From that judgment the Commonwealth prosecutes this appeal, and for a reversal insists: (1) that under the statute the court should have sustained its demurrer to the petition; and (2) this tax having been voluntarily paid into the State Treasury, there can be no recovery in any event.

As heretofore stated, this action is brought under Section 162 of the Kentucky Statutes, which reads as follows:

"When it shall appear to the Auditor that money has been paid into the treasury for taxes when no such taxes were in fact due, he shall issue his warrant on the treasury for such money so improperly paid in behalf of the person who paid the same. Nothing herein contained shall authorize the issuing of any such warrant in favor of any person who may have made payment of the revenue tax due on any tract of land unless it is manifest that the whole of the tax due the Commonwealth on such land has been paid, independent of the mistaken payment, and ought to be reimbursed."

This statute has several times been construed by this court; notably in German Security Bank v. Coulter, Auditor, 112 Ky., 579, where we reviewed the former ruling of the court in Bank v. Stone, 108 Ky., 427.

In the Coulter case the bank asked a mandamus to compel the Auditor to issue his warrant to the bank for

an excessive payment of taxes to the Commonwealth, which resulted from an admitted excessive assessment. It was conceded the excessive part of the taxes was not due the State; but, in speaking of its recovery under the Section 162, *supra,* the court said:

"The balance of the claim asserted in this action does not come within the provisions of the statute, as will be hereinafter shown. This is not an action against the State. If it was, it could not be maintained, because the State has not, by the statute quoted, or any other statute, given consent to be sued. The primary intention of the statute was to authorize the Auditor to refund to officers who collected taxes due the State, and paid more into the treasury than was in fact due from them. It was not intended to authorize the Auditor to correct assessments made of the property of taxpayers, and refund the amounts he may determine are due them; for the statutes clearly provide whose duty it is to make assessments of property, how they may be corrected, and the time in which it may be done. The Auditor is not the official upon whom the law confers such authority.   *   *   *

"This is a mandamus proceeding to compel the Auditor of Public Accounts to issue his warrant for the sum alleged to be due the appellant for an excessive payment of the taxes which resulted from excessive assessment. It is not an action to recover all the taxes paid, but the difference between the amount collected and the amount which it claimed should have been collected on a correct assessment. This action cannot be maintained."

Likewise, in the case at bar, appellee is seeking to recover only the excess it paid upon the tax bill made out against it by the Insurance Commissioner, and based upon the report made by the appellee.

Again, in Couty v. Bosworth, Auditor, 160 Ky., 313, the appellant paid, after suit by the Auditor's Agent, the State tax of $580.15 upon 100 shares of the capital stock of the American Tobacco Company, which were not due because the company had paid the tax; and by mandamus proceedings Couty sought to require the Auditor to draw his warrant, by way of reimbursement, in precisely the same manner followed in the case at bar.

Referring to the language above quoted from German Security Bank v. Coulter, Auditor, the court said:

"This seems to us to be a sound principle. We do not believe that the Legislature ever intended to enact a law that would permit any person who thought he had been required to pay a greater amount of taxes than he thought to be due, or to pay taxes on property that he considered exempt, or even to pay taxes to the sheriff or collecting officer of a county, through mistake, to appear before the Auditor of Public Accounts and require him to take up and pass upon the merits of the claim; and then, if it appeared to him that the tax had been improperly paid, to draw his warrant on the Treasurer for the amount appearing to him to be due the claimant."

In the Coulter case, *supra,* the court reiterated the familiar rule that taxes voluntarily paid could not be recovered; and that the rule was otherwise only when the payment of the tax could be coerced by summary levy and sale of property by the collecting officer. In the case at bar the tax against appellant was recoverable by action. Kentucky Statutes, Sec. 4233.

But in the Couty case, *supra,* the tax had been recovered and paid in a suit by the Auditor's Agent; and, although they were not due, and therefore improperly collected, a recovery was denied under the statute. There can be no action against the State to recover taxes which have been paid into the treasury unless it be authorized by statute; and such an action can be maintained only upon the terms prescribed by the statute.

In the case at bar appellee not only paid the excessive portion of the tax, but, if the law of 1906 was in force when it was paid, appellee would have owed no tax for the last half of the year 1905, since the act of 1906 required the report to be made as of January 1, 1907, for the preceding year 1906. It is not to be presumed that the Legislature intended to exempt the appellee from taxation for this six months.

The Couty case was a much stronger case for the taxpayer than the present case, in that Couty was forced to pay his invalid tax by suit; nevertheless, he was denied a recovery. It is controlling authority against appellee's right to recover in this case.

Appellee paid this excessive tax in July, 1906; it did not make a demand for its repayment until March, 1908, and waited until April, 1912, before it instituted

this action to recover it. In the meantime the State had long since used the money for governmental purposes. These facts emphasize the wisdom of the rule and the interpretation given the statute in the Coulter case and in the Couty case. An affirmance of the judgment in this case would amount to a reversal of those cases; and that, we are unwilling to do.

Judgment reversed and action remanded with instructions to dismiss the petition.